## CIVIL TRIAL INFORMATION AND INSTRUCTIONS

Judge William T. Moore, Jr.
United States District Court
Southern District of Georgia

This information is intended to inform counsel of the procedures to follow in the preparation and trial of a case that has been assigned to Judge Moore.

Trials will generally begin at 9:00 a.m. and run until approximately 6:00 p.m. There will be a short mid-morning and mid-afternoon recess. A one hour lunch recess will usually occur between 12:00 and 1:00 p.m.

1.   Conduct of Voir Dire.

The jurors will be seated in the courtroom as they arrive. They are not seated in any particular order. Following the taking of the roll, the jurors will be generally qualified by the clerk. The Court will then take the bench and the case will be called for jury selection. After a brief welcome from the Court, the clerk is instructed to select, at random, from those jurors present the requisite number of jurors to conduct voir dire. These jurors will be seated in the jury box in the order in which they are called.

The Court will then address this panel by giving them a brief outline of the case. Voir dire follows, conducted solely by the Judge. The jurors are qualified as to the particular case, and their relationship to the parties and counsel.

Following the Court's voir dire, each individual juror's name is called. Each potential juror is instructed to stand and answer questions from a biographical sheet given to him/her upon reporting for jury duty. Before the next potential juror is called to respond, counsel is given the

opportunity to ask additional questions of the juror.

After the last juror has responded to the questionnaire, and any additional questions propounded by counsel, if there are any challenges for cause, counsel will request permission to approach the bench.

2. Peremptory Challenges.

The plaintiff and the defendant will each have three peremptory challenges. Multiple plaintiffs and multiple defendants will generally be considered as a single party for the purpose of making challenges. The challenges or strikes will be done silently with the clerk moving from one counsel to the other.

3. Excusal of Witnesses.

All witnesses called to testify will be subject to the control of counsel who subpoenaed them (or secured their voluntary appearance). At the close of the witness's testimony, counsel need not ask the Court's permission to excuse the witness. Rather, the witness may be excused unless other counsel requests at that time that the witness not be excused. If the witness is not excused, the witness must remain outside the courtroom for the remainder of the Court session on that day. Attendance on subsequent dates is not required unless the party desiring the witness' attendance serves a subpoena upon the witness. Payment of a witness's per diem and other covered expenses is the responsibility of counsel who on that date has the witness under subpoena.

4.   Request to Charge.

Attorneys are required to submit proposed jury instructions to the Court as directed in the pretrial order. In no event shall they be filed less than seven (7) days before the first day of the trial. The Court directs counsel to use the Eleventh Circuit Pattern Jury Instructions in their requests if applicable and, if not, to use Devitt and Blackmar for federal question cases and the Georgia Pattern Charges for diversity cases. Counsel should be sure to cover all substantive law issues and should not assume that the Court has its own charge on substantive law. Each party is limited to fifteen (15) requests to charge, excluding pattern charges, except upon prior authorization by the Court. Each request to charge shall be numbered sequentially on a separate page with the authority for the request to charge cited at the bottom of the page. The Court requests that the parties attempt to update archaic authority with current case law. The original and two (2) copies of the requests to charge shall be filed with the Clerk of Court. See Local Rule 51.

5. Impeachment - Inconsistent Statement.

A subject with which many counsel have difficulty at the trial is the use of depositions for impeachment purposes.

The Federal Rules of Evidence now define prior contradictory statements under oath in depositions as non-hearsay statements. Fed.R.Evid. 801(d)(1)(A). Therefore, prior inconsistent statements of a witness in a deposition are admissible as substantive evidence to prove the truth of the matter asserted. As a result, those portions of the prior deposition which are inconsistent with in-court testimony of the deponent, in addition to being used for impeachment, can actually

3

be received as substantive evidence to prove the truth of the matter contained therein.

Counsel should impeach by developing on cross-examination the fact that the deposition was taken. Counsel should state where the deposition was taken, emphasizing that deponent's attorney was present. Counsel should bring out the fact that the witness read over the deposition, made no changes or corrections and then signed it. Counsel should then ask the witness the question <u>in the same manner and style</u> that it was asked in the deposition. If s/he answers it differently, counsel should then call his/her attention to the time, place, and circumstances of the deposition. Counsel should then give opposing counsel the <u>page</u> and <u>line</u> and state "in answer to such and such a question to you, did you not answer so and so?" If s/he says "yes," s/he has admitted the inconsistent statement. If s/he says "no," counsel may offer into evidence the relevant pages of the deposition as a prior inconsistent statement. (This last step is rarely taken by counsel). During this process the statement need not be shown nor its contents disclosed to opposing counsel except upon request. FRE 613(a)

6. <u>Establishing Predicate For Admission Of Business Records</u>.

Another subject with which many counsel have difficulty at the trial is establishing the predicate for admission of business records. With particular reference to the introduction of records or documents under Rule 803(6) of the Federal Rules of Evidence (the "business records" exception to the hearsay rule), the following predicate facts <u>must</u> be developed through examination of a witness (and not left to speculation or conclusions to be drawn from the document itself):

(1) That the record was made at or near the time of the event or transaction described;

4

(2) That the record was made by a person with knowledge of the event or transaction described (or was made from information transmitted to the preparer by a person with knowledge);

(3) That the record was made in the course of a regularly conducted business activity (if made from information transmitted to the preparer by a person with knowledge, that such person was acting in the regular course of business);

(4) That it was a part of that regularly conducted business activity to make and keep that record; and

(5) That the witness is able to identify the document from actual knowledge of its preparation or as its business custodian.

To establish these predicate facts, the following questions (with appropriate variations if necessary) must be asked:

(1) Are you familiar with the document?

   (Custodian or Preparer)

(2) Who prepared the document?

   (Name and/or job title of Preparer)

(3) What is the nature of the document?

   (Without disclosing specific contents)

(4) When was the document prepared?

   (At or near the date of the transaction described)

(5) What was the source of the information relied upon by the person who prepared the document?

5

(Personal observation or reliable information transmitted by others)

(6) Was the document prepared in the usual course of a regularly conducted business activity?

(7) Was it a part of that activity to make and keep the record?

(8) If made upon reliable information transmitted by others, was the informant acting in the course of a regularly conducted business?

7. <u>Evidence of a Witness's Truthful Character</u>.

Rule 608(a)(2) provides that reputation and opinion evidence tending to establish the truthful propensity of any witness may be admitted only after the principal witness's character has in fact been attacked by opinion or reputation evidence or by other impeachment evidence which represents an attack on character. While every witness's credibility is an issue for the trier of fact, this does not, in the absence of an attack on character, authorize a party to bolster any witness through use of a character witness. The condition precedent for the use of a rehabilitation character witness is an attack on the character of the primary witness, and mere impeachment not involving the character of the primary witness is insufficient to authorize the calling of a positive character witness.

Where a prior inconsistent statement of a witness is introduced, where a witness is simply shown to be confused, or where a witness merely provides conflicting testimony, the witness's credibility may not be bolstered through a character witness attesting to the primary witness's good character for veracity. By comparison, however, where impeachment is effected by a negative character witness pursuant to Rule 608(a), by interrogation as to prior acts probative of

6

untruthful character under Rule 608(b), or by evidence of a criminal conviction under Rule 609, the character of the primary witness is, in fact, attacked and, therefore, may be rehabilitated with a positive character witness.

The qualifications of an impeachment character witness are essentially the same as those qualifications applicable to a character witness under Rule 405. S/He must be a <u>member of an appropriate community</u> where the reputation of the person characterized is known. The character witness testifies to the reputation of the primary witness in regard to the character trait of veracity or truth-telling. The character witness may also be asked to state his/her personal opinion as to the veracity of the primary witness sought to be impeached. The character witness is not, however, permitted to testify to specific instances of untruthful conduct of the primary witness on direct examination. Specific acts of conduct of the primary witness may be elicited on cross-examination of the character witness in order to test the basis for his/her reputation or opinion testimony.