**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | | |
|---|---|---|
| CHARLES D. HALL, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| 84 LUMBER COMPANY, | ) | |
| DARREN RICHARDSON, and | ) | Civil Action File No. |
| KEITH CONNOR, | ) | 4:09-CV-57-WTM |
| | ) | |
| Defendants/Third-Party | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ROBERT VINAL and ROBERT C. | ) | |
| VINAL, INC., | ) | |
| | ) | |
| Third-Party Defendants. | ) | |
| _____ | ) | |

## DEFENDANTS'/THIRD-PARTY PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF ON TORT IMMUNITY

COMES NOW, Defendants/Third-Party Plaintiffs 84 Lumber Company ("84 Lumber"), Darren Richardson ("Richardson"), and Keith Conner ("Conner") (collectively "Defendants/Third-Party Plaintiffs"), and respectfully request this Court to consider whether Defendants'/Third-Party Plaintiffs' Motion for Summary Judgment should be granted where: (1) 84 Lumber entered into contractual agreements with its customers for the sale of construction materials, services, and supplies; (2) where in order to fulfill its obligations under those contracts, 84 Lumber entered into a subcontract with Third-Party Defendants ("Vinal") for the transportation and delivery of construction materials and supplies; (3) where as a result of entering into a subcontract with Vinal, 84 Lumber became secondarily liable to the employees of Vinal for the payment of workers' compensation claims made by the employees of Vinal; (4)

where Plaintiff, an employee of Vinal was injured on the premises of 84 Lumber while providing a substantial service pursuant to the subcontract; (5)  where Plaintiff has collected workers' compensation benefits from Vinal, his immediate employer; and (6) where Conner and Richardson were supervisors for 84 Lumber that were engaging in non-delegable duties within the scope of their employment and whose actions or inactions were not directed specifically towards the Plaintiff when the Plaintiff's injury occurred.

## I.   <u>STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY</u>

Plaintiff's Complaint against Defendants/Third-Party Plaintiffs, filed on March 24, 2009, alleges that on February 27, 2007, Plaintiff was injured when his foot was run over by a forklift driven by Richardson, a former 84 Lumber employee. <u>See</u> <u>generally</u> Complaint and First Amended Complaint., Doc. No.1.  84 Lumber is a limited liability for-profit partnership engaged in the business of selling building materials and installation services to professional contractors. <u>See</u> Affidavit of 84 Lumber at ¶ 2, attached hereto as Exhibit A.  84 Lumber enters into Contractor Commercial Credit Agreements with its customers for the supply of building materials and installation services which includes the specific terms and conditions for the sale and/or service of a customer's construction project. <u>See</u> <u>for</u> <u>example</u> Contractor Commercial Credit Agreements at Exhibit 1 of Affidavit of 84 Lumber.

### 1.    *The Independent Hauler Agreement Between 84 Lumber and Vinal*

On or about May 31, 2005, 84 Lumber entered into an Independent Hauler Agreement (the "Subcontract") with Vinal that required Vinal to provide supervision, loading, unloading, transportation, and related services for the customers of 84 Lumber.  <u>See</u> Independent Contractor Hauler Agreement at Exhibit B. Additionally, the Subcontract required Vinal to provide "Workers' Compensation Insurance covering employees…in amounts required to fulfill the terms of this Agreement, and as provided by law…" <u>Id.</u> at Section V.  Also pursuant to the

Subcontract, Vinal was required to defend and indemnify 84 Lumber against claims brought against it by any Vinal employee. Id. at Section IV. The Subcontract automatically renewed and continued from year-to-year and was in effect on the day of Plaintiff's injury. See Subcontract at Section I; see also Deposition of Robert Vinal at 105:9-19, attached hereto as Exhibit C. Vinal was the only hauling company that transported and delivered building materials to the customers of 84 Lumber in the Savannah, Georgia area. [Affidavit of 84 Lumber at ¶ 12]. The Plaintiff was hired by Vinal as a hauler to transport and deliver 84 Lumber's construction materials to its customers. See Deposition of Charles Hall at 24:19-26:15, attached as Exhibit D.

2.    *84 Lumber's Order and Delivery Process*

Typically, when a customer calls an 84 Lumber store to place an order for materials, a load ticket is created that is given to the yard person who pulls the materials from stock and builds a load for the delivery truck. [Affidavit of 84 Lumber at ¶ 5]. The load ticket is given back to 84 Lumber's office personnel who will create a computerized invoice based on the materials listed on the load ticket that was pulled by the yard person. [Affidavit of 84 Lumber at ¶ 6]. For morning deliveries, the materials are typically preloaded onto a Vinal delivery truck on the evening before the scheduled delivery. [Affidavit of 84 Lumber at ¶ 7]. On the scheduled delivery date, a computerized invoice is printed and a delivery ticket and bill of lading is prepared. The invoice includes the date and time that the invoice was printed. [Affidavit of 84 Lumber at ¶ 8]. The delivery ticket and bill of lading is then given to a Vinal driver who, upon delivery, will provide the customer with the delivery ticket and bill of lading. [Affidavit of 84 Lumber at ¶ 8]. Every delivery made on the day of Plaintiff's injury, were to customers who had a contract with 84 Lumber. [Affidavit of 84 Lumber at ¶ 10].

3.    *The Plaintiff's Injury*

On February 27, 2007, while on the premises of 84 Lumber for the purpose of making

deliveries to 84 Lumber's customers, the Plaintiff was injured by a forklift driven by Richardson. [Complaint at ¶¶ 6-7, 13].   Richardson was preparing to build a load of lumber in his capacity as Warehouse Supervisor when he engaged his forklift that subsequently collided with the Plaintiff. <u>See</u> Customer Injury/Auto Damage Report at Exhibit B to Defendants'/Third-Party Plaintiff's Statement of Undisputed Material Facts and Conclusions of law filed simultaneously hereto; <u>see also</u> Deposition of Conner at 15:24-16:9, attached hereto as Exhibit E.   Accordingly, Richardson was acting within the scope of his employment as Warehouse Supervisor for 84 Lumber when the Plaintiff's injury occurred.   <u>See</u> Affidavit of Keith Conner at ¶ 5, attached hereto as Exhibit F.  Conner was the Store Manager for 84 Lumber's Savannah, Georgia store where the Plaintiff's injury occurred and was not present at the time of the accident. [Conner Deposition at 8:6-12, 29:14-20].

On the day of the Plaintiff's injury, Vinal employees were scheduled and in fact did make seven deliveries to six 84 Lumber customers.   <u>See</u> February 27, 2007 Invoices at Exhibit G; Hauler Logs at Exhibit H.   There were no deliveries made on February 27, 2007 that were carried over from previous deliveries.   [Affidavit of 84 Lumber at ¶ 11].    According to the Plaintiff, on the date his injury occurred, he arrived at the 84 Lumber store around 7:45 a.m. to report for transportation and deliveries.   [Hall Deposition, at 71:4-19]. Plaintiff stated that he completed his pre-trip duties, and went inside 84 Lumber's office to see what deliveries were to be made that day.   [Hall Deposition at 71:23 – 72:01].   According to Michael Mitchell, an employee of Vinal and Plaintiff's immediate supervisor, the Plaintiff's truck was not pre-loaded and ready for deliveries when he reported to work on that day. <u>See</u> Deposition of Michael Mitchell at 20:15-24, attached hereto as Exhibit I.  Plaintiff stated that after completing his pre-trip duties, he went out to the lumberyard and participated in a meeting with his supervisor and two other Vinal employees to discuss issues with deliveries made by other Vinal drivers to 84

Lumber's customers. [Hall Deposition at 73:13, 75:02-06].  Plaintiff testified that during the meeting he provided instruction to his co-workers about how and where to place building materials at the construction site.  [Hall Deposition at 77:08-19].  The meeting lasted around one hour and forty five minutes.  [Hall Deposition at 75:02-06].  Plaintiff testified that while still engaged in the meeting, he was injured when a forklift driven by Richardson ran over his right foot.  [Hall Deposition at 77:17]. The Plaintiff collected workers' compensation benefits from Vinal in the State of Florida as a result of his injury. [Hall Deposition at 105:21-106:10].

4.     *Procedural History*

On November 20, 2009, 84 Lumber filed its Motion and Brief for Leave to Amend its Answer to Plaintiff's Complaint and Amended Complaint to assert a defense of statutory immunity pursuant to O.C.G.A. §§ 34-9-8 and 34-9-11.  [Doc. No. 89].  The Motion for Leave to Amend was granted and 84 Lumber filed its Amended Answers to Plaintiff's Complaint and Amended Complaint on April 1, 2010.  See Doc. Nos. 109 and 110, respectively.  84 Lumber now files its Motion for Summary Judgment because the facts show that 84 Lumber was the Plaintiff's statutory employer at the time of the Plaintiff's injury and is therefore immune from tort liability, and that Defendants/Third-Party Plaintiffs' Conner and Richardson share in the immunity of their employer 84 Lumber Company because they were acting in their capacity as supervisory employees when the injury complained of occurred. Accordingly, 84 Lumber's Motion for Summary Judgment should be granted.

## II.     <u>STANDARD OF REVIEW</u>

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving parties are entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Midrashi Sephardi, Inc. v. Town of Surfside</u>, 366 F.3d

1214, 1223 (11th Cir. 2004). An issue of fact is "material" if it might affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 1260 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, if any, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)). The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. Thompson v. Metro. Multi-List, Inc., 934 F.2d 1566, 1583 n. 16 (11th Cir. 1991); Chanel, Inc. v. Italian Activewear of Fla., Inc., 931 F.2d 1472, 1477 (11th Cir. 1991). When the nonmoving party has the burden of proof at trial, the moving parties may discharge their burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. Acevado v. First Nat'l Bank, 357 F.3d 1244, 1247 (11th Cir.2004).

Moreover, if the nonmoving party's response to the summary judgment motion consists of nothing more than mere conclusory allegations, then the Court must enter summary judgment in the moving party's favor. Pepper v. Coates, 887 F.2d 1493, 1498 (11th Cir. 1989). Although the Court must view the facts in the light most favorable to the nonmoving party, Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir.1992), the Court must avoid weighing conflicting evidence. Liberty Lobby, 477 U.S. at 255, 106 S. Ct. at 2513; McKenzie v. Davenport-Harris Funeral Home, 834 F.2d 930, 934 (11th Cir.1987).   And a mere "scintilla" of evidence

supporting the opposing party's position, will not suffice. <u>See</u>, *e.g*., <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11th Cir.1990).   Thus, Defendants'/Third-Party Plaintiffs' Motion for Summary Judgment should be granted because there is no genuine issue of material fact that would dispute a finding that 84Lumber as the Plaintiff's statutory employer and Conner and Richardson as employees of their statutory employer performing duties within the scope of their employment at the time of Plaintiff's injury, are entitled to tort immunity as a matter of law.

### III.   ARGUMENT AND CITATION OF AUTHORITY

**A.   84 Lumber's Motion For Summary Judgment Should Be Granted Because 84 Lumber Was Plaintiff's Statutory Employer And Is Therefore Entitled to Tort Immunity Pursuant to   O.C.G.A. § 34-9-8 and O.C.G.A. § 34-9-11.**

A principal, intermediate, or subcontractor shall be liable for compensation to any employee injured while in the employ of any of his subcontractors engaged upon the subject matter of the contract to the same extent as the immediate employer. O.C.G.A. § 34-9-8(a).  By its terms, O.C.G.A.  § 34-9-8(a) provides for secondary liability for an injured workers' compensation benefits.  Accordingly, if an entity is secondarily liable for workers' compensation benefits under this Code section, then it is deemed a statutory employer entitled to tort immunity under O.C.G.A. § 34-9-11, the Workers' Compensation Act (the "Act").   <u>Carver v. Jasper Constr. Co.</u>, 183 Ga. App. 485 (1987) (any company falling under this definition is considered a "statutory employer" of its subcontractor's injured employee).   And statutory employers are immune from tort liability under Act. <u>Wright Assoc. v. Rieder</u>, 247 Ga. 496, 500 (1981);   This immunity applies even if the employer never paid the injured employee workers' compensation benefits or even if the employer has been indemnified from paying such benefits.   <u>Patterson v. Bristol Timber Co.</u>, 286 Ga. App. 423,420 (2007).   This Code section applies only in cases where the injury occurred on, in, or about the premises on which the principal contractor has

undertaken to execute work or which are otherwise under his control or management.  O.C.G.A. § 34-9-8(d).

A "principal contractor" is defined as one who engages subcontractors to assist in the performance of the work in which the principal contractor has undertaken to perform for another. Yoho v. Ringier of Amer. Inc., 263 Ga. 338, 340 (1993).  In Yoho, the Supreme Court of Georgia interpreted the meaning and intent of O.C.G.A. § 34-9-8 and held "owners or entities merely in possession or control of the premises would not be subject to workers' compensation liability as statutory employers, except in the isolated situation where the party also serves as a contractor for yet another entity and hires another contractor to perform the work on the premises." Id. at 340.   And an entity is not precluded from attaining principal contractor status where the contract in question is for the sale of goods.  International Leadburning Co. v. Forrister, 213 Ga. App. 558 (1994) (summary judgment motion granted to company where contractor-subcontractor relationship existed qualifying company as statutory employer although contract was for the sale of goods).  However, in order to attain principal contractor status within the meaning of O.C.G.A. § 34-9-8 on a contract for the sale of goods, the contract to sell must be accompanied by an undertaking by either party to render substantial services in connection with the goods sold.  Gray Building Systems v. Trine, 260 Ga. 252 (1990) (*citing* Evans v. Hawkins, 114 Ga. App. 120, 124 (1966)).   An entity is also not precluded from attaining principal contractor status within the meaning of the statute even though the contract between the principal and the subcontractor is for the delivery of goods and materials.  Patterson v. Bristol Timber Co., 286 Ga. App. 423 (2007).

84 Lumber demonstrates and the record supports a finding that 84 Lumber qualifies for tort immunity and is entitled to a grant of summary judgment as a matter of law because the undisputed facts show that 84 Lumber was Plaintiff's statutory employer, pursuant to a principal

contractor-subcontractor relationship that it had entered into with Plaintiff's employer, and that as such, was potentially liable for the payment of Plaintiff's workers' compensation benefits, for an injury that the Plaintiff sustained on 84 Lumber's premises while engaging upon the subject matter of the Subcontract.

### B.   As Plaintiff's Statutory Employer, 84 Lumber Would Have Been Secondarily Liable to Pay Workers' Compensation Benefits to Plaintiff.

Pursuant to O.C.G.A. § 34-9-8, 84 Lumber would have been potentially liable for the payment of the Plaintiff's workers' compensation benefits in the event that the Plaintiff would have been unable to collect those benefits from his immediate employer Vinal, and as such 84 Lumber is afforded immunity from the Plaintiff's tort claims.   O.C.G.A. § 34-9-8 provides in relevant part:

(a) A principal, intermediate, or subcontractor shall be liable for compensation to any employee injured while in the employ of any of his subcontractors engaged upon the subject matter of the contract to the same extent as the immediate employer.

(b) Any principal, intermediate, or subcontractor who shall pay compensation under subsection (a) of this Code section may recover the amount paid from any person who, independently of this Code section, would have been liable to pay compensation to the injured employee or from any intermediate contractor.

(c) Every claim for compensation under this Code section shall be in the first instance presented to and instituted against the immediate employer, but such proceedings shall not constitute a waiver of the employee's right to recover compensation under this chapter from the principal or intermediate contractor…. The collection of full compensation from one employer shall bar recovery by the employee against any others, and the employee shall not collect a total compensation in excess of the amount for which any of the contractors is liable.

O.C.G.A. § 34-9-8(a,b,c).   Accordingly, it is the statutory employer's potential liability for workers' compensation benefits rather than actual liability that triggers tort immunity.   Wright Assoc. v. Rieder, 247 Ga. 496, 499 (1981).   Moreover, the fact that Vinal paid the Plaintiff's workers' compensation benefits is of no consequence since the immunity applies to 84 Lumber even though the benefits were paid by Vinal and not by 84 Lumber.   Id.   Furthermore, where a

nonresident employee like the Plaintiff in the present case is hired by a foreign corporation, and is injured in Georgia, arising out of and in the scope of his employment, Georgia will apply its own substantive law, whether or not the Georgia Workers' Compensation law was invoked to pay, because the Georgia conflicts of law rules look to the state of the last act completing the tort to determine the applicable substantive law.  Performance Food Group v. Williams, 300 Ga. App. 831, 833 (2009); Liberty Mut. Ins. Co. v. Roark, 297 Ga. App. 612, 614 (2009). "[I]f the plaintiff is eligible for workers' compensation under the law of the state where the tort was committed, the law of that state is applicable even though the plaintiff may have received and accepted workers' compensation in another state." Sargent Indus. v. Delta Air Lines, 251 Ga. 91, 94, (1983); Dowis v. Mud Slinger Concerete, Inc., 269 Ga. App. 805, 806 (2005).

In Wright, the Georgia Education Authority contracted with Wright Associates, Inc. ("Wright"), for the construction of an academic building. Wright, as the general or prime contractor, then contracted with Eastern Steel Erectors, Inc. ("Eastern"), an independent subcontractor, for certain on-site work.  Thomas Rieder ("Rieder"), an Eastern employee, was injured in an on-site accident and recovered workers' compensation benefits from Eastern. Wright, 247 Ga. at 496.  He then sued Wright alleging that his injury was caused by the negligence of a Wright employee.  Nearly two years after answering, Wright moved for summary judgment on the ground of statutory employer immunity.  The trial court denied the motion for summary judgment but certified the question for immediate review. After the Court of Appeals denied the application for interlocutory review, Wright petitioned for writ of certiorari, which was granted.  Id. at 497.  The Supreme Court of Georgia addressed the issue of whether an employee of a subcontractor engaged upon the subject matter of the contract who is injured on, in or about the premises on which the principal contractor has undertaken to execute the work, can maintain an action in tort against the principal contractor where the subcontractor

is an independent contractor and where workers' compensation benefits were paid by the subcontractor.  Id.

The court ruled that Rieder's action could not be maintained against Wright.  There, Wright argued that as a statutory employer liable to pay workers' compensation benefits under the Act, it should receive the correlative benefit of tort immunity under the Act.  The court agreed and opined:  "[s]ince the general contractor is thereby, in effect, made the employer for the purposes of the compensation statute, it is obvious that he should enjoy the regular immunity of an employer from third-party suit when the facts are such that he could be made liable for compensation; and the great majority of cases have so held."  Id. at 499 (citing 2A Larson, The Law of Workmen's Compensation, s 72.31 at p. 14-47).[1]

Rieder further argued that even if a statutory employer is normally insulated from tort liability despite the fact that he had not paid workers' compensation benefits, he should not be where, as here, he had a contract with the subcontractor which provided that the subcontractor must carry workers' compensation insurance and in the event that the statutory employer was held liable for workers' compensation benefits, he would be indemnified by the subcontractor. Id.  The court reasoned that because the Act gives a right of indemnification absent a contract, this amounts to an argument that because of the statutory right of indemnification as to compensation benefits, a statutory employer should not be immune from tort liability. To this the court disagreed and explained:

> [T]he purpose of the Act is to ensure that employees in construction and other industries are covered by workers' compensation.  In order to do so, it places an increased burden, in the form of potential liability for workers' compensation benefits, on the statutory

---

[1]  The court further opined: "[w]e are not unaware that the same commentator has pointed out that statutory employer statutes are customarily worded in terms of "subcontractors", as is Georgia's, and that for the most part that term is held not to encompass independent contractors. Id., s 72.31 at p. 14-57, 58. We do not, however, so construe our statute. Many, if not most, subcontractors are independent contractors as the cases attest. See, e. g., Blair v. Smith, 201 Ga. 747 (1947); accord Johnson v. Briggs, 34 App.Div.2d 1068, 312 N.Y.S.2d 637, 638 (Sup.Ct.1970)."

employer. This encourages the statutory employer to require subcontractors to carry workers' compensation insurance.  The fact that the statutory employer reacts to the statute in the manner intended by the legislature should not result in a penalty on the statutory employer. Conversely, if the statutory employer does not require subcontractors to provide compensation benefits (as intended by the statute), the statutory employer may acquire tort immunity. The quid pro quo for the statutory employer's potential liability is immunity from tort liability. The fact that the statutory employer has a right to indemnification, statutory or contractual, does not strip him of his tort immunity.

Id. (*citing* 2A Larson, The Law of Workmen's Compensation, s 72.31, p. 14-55, 56, s 72.32, p. 14-66 n. 72.).

This Court should find that the Plaintiff in the present case cannot maintain an action against 84 Lumber where like <u>Wright</u>, the Plaintiff was injured on the premises of 84 Lumber, and subsequently collected workers' compensation benefits through Vinal.  Because 84 Lumber would have been secondarily liable for paying the Plaintiff's workers' compensation benefits, 84 Lumber should receive the correlative benefit of tort immunity. The sole purpose of Vinal's Subcontract with 84 Lumber was to service the contracts that 84 Lumber had with its customers. Pursuant to the Subcontract, Vinal was required to provide:

supervision, loading, unloading, transportation, and related services…for the customers of 84 in a good, safe and workmanlike manner, using suitable equipment, maintained and operated in a responsible and safe manner to deliver materials….

Subcontract at Section II.  The Subcontract further provided that Vinal would provide "Workers' compensation Insurance covering employees…in amounts required to fulfill the terms of this Agreement, and as provided by law…" <u>Id.</u> at Section V.  Also pursuant to the Subcontract, Vinal was required to defend and indemnify 84 Lumber against claims brought against it by any Vinal employee.  <u>Id.</u> at Section IV.  Like the contract language addressed in <u>Wright,</u> the terms of the Subcontract at hand would not preclude 84 Lumber from being granted tort immunity.

The Plaintiff, an employee of Vinal, was hired as a hauler/driver to transport and deliver 84 Lumber's building materials to its customers.  [Complaint at ¶¶ 6-7]. Plaintiff was injured on February 27, 2007 on the premises of 84 Lumber. [Complaint at ¶ 13].    The Plaintiff

subsequently collected workers' compensation benefits from Vinal in the State of Florida from the date of his injury through on or about November 2008 when his then treating physician determined that he had reached maximum medical improvement.  [Hall Deposition at 105:21-111:17]. The fact that Plaintiff collected workers' compensation benefits in Florida does not preclude application of the exclusive remedy provision of the Georgia Workers' Compensation Act.  Dowis v. Mud Slinger Concerete, Inc., 269 Ga. App. 805, 806 (2005).  Like Wright, 84 Lumber is shielded from the Plaintiff's tort claims even though it did not pay the Plaintiff's workers' compensation benefits because 84 Lumber would have been potentially liable to pay Plaintiff's workers' compensation benefits if he had been unable to collect through Vinal, his immediate employer.   And, because the Plaintiff has already collected full workers' compensation benefits from Vinal, he is barred as a matter of law from recovering against any others pursuant to O.C.G.A. § 34-9-8(c).  Because the "quid pro quo for the statutory employers' potential liability is immunity from tort liability," the Plaintiff's claims against 84 Lumber should be dismissed. Wright, *supra*, 247 Ga. at 499.

>    **C.**    **The Contract Between 84 Lumber and Vinal Established A Principal Contractor-Subcontractor Relationship For the Sale of Goods As Distinguished From A Shipper-Carrier Relationship.**

Since the secondary liability for workers' compensation imposed under O.C.G.A. § 34-9-8 is predicated upon the existence of the principal contractor-subcontractor relationship, it is limited to those who contract to perform certain work, such as the *furnishing of goods and services*, for another and then sublet in whole or part the work contracted for.   International Leadburning Co. v. Forrister, 213 Ga. App. 558 (1994); Yoho v. Ringier of Amer., *supra*, 263 Ga. 338 (1993).    84 Lumber's relationship with Vinal was one of principal contractor-subcontractor within the context of this Code section because 84 Lumber contracted with its customers to supply and deliver building materials and installation services and then sublet a part

of its work to Vinal for the transportation and delivery of those building materials and supplies. See generally Subcontract.

For example, in International Leadburning Co. v. Forrister, *supra*, Kemira Inc. ('Kemira") entered into a contract with the International Leadburning Company ("ILC") to refurbish a lead kettle owned by Kemira. 213 Ga. App. at 558.   In order to have the kettle transported back to Kemira, ILC contracted with Heaton Erecting ("Heating") to provide a crane to lift the kettle onto a tractor-trailer.  ILC also contracted with a trucking company to transport the kettle back to Kemira. Id.  Mr. Forrister, a crane operator employed by Heaton, was killed when the kettle that had been lifted onto the trailer rolled off and crushed him.   After the accident, plaintiff and widow Mrs. Forrister, began receiving monthly workers' compensation payments from Heaton.

In addition to subsequently filing suit against the trucking company and the driver, Mrs. Forrister also brought action against ILC alleging negligence in the loading and/or supervision of the loading of the kettle onto the trailer.  Id.   ILC argued that it was immune from tort liability because it was Mr. Forrister's statutory employer.  Mrs. Forrister counter-argued that ILC was not a contractor entitled to tort immunity under the statute because the contract between Kemira and ILC was a contract for the sale of goods and ILC was merely the owner of the premises on which the work was performed and where Mr. Forrister was injured.  Id. at 558-559.

The court, in relying upon the holding in Yoho, *supra*, held that only a contractor can be a statutory employer and an "owner" cannot be a contractor if the contractual obligation of performance is owed to rather than by, the owner.  "An owner does not attain 'contractor' status under O.C.G.A. § 34-9-8(a) by his active involvement in the enterprise, but only in the isolated situation where (he) also serves as a contractor for yet another entity and hires another contractor to perform the work…"   Id. at 559 (*citing* Yoho v. Ringier of Amer., 263 Ga. 338, 341 (1993).

Here, the court reasoned that because ILC was contractually obligated to refurbish Kemira's kettle, and that upon completion, ILC was responsible for making arrangements to transport the kettle back to Kemira, and in doing so was required to subcontract with Heaton to complete its contract with Kemira, pursuant to which Mr. Forrister was injured while engaged upon the subject matter of the contract on ILC's premises, that ILC was both a principal contractor and Mr. Forrister's statutory employer in accordance with O.C.G.A. § 34-9-8.  Therefore, ILC was granted tort immunity relief from Mrs. Forrister's claims.  Id.

The facts in the present case are analogous to International Leadburning.  84 Lumber sells building materials, supplies, and services to its customers by way of Contractor Commercial Credit Agreements.  [Affidavit of 84 Lumber at ¶ 3].  84 Lumber subcontracted with Vinal to ensure that the building materials and supplies are properly delivered and received by its customers.  See Subcontract.  Thus, 84 Lumber was in that "isolated situation" referred to by the Yoho court, supra, whereas 84 Lumber acted as principal contractor to its customers and hired Vinal to perform work in furtherance of its contracts with its customers.  Yoho, 263 Ga at 340.  The Plaintiff was injured on the premises of 84 Lumber in furtherance of the Subcontract which qualifies 84 Lumber as both the principal contractor and Plaintiff's statutory employer entitled to tort immunity.

**D.     The Subcontract Between 84 Lumber and Vinal Was Not One Of Shipper and Carrier Such That Tort Immunity Would Be Improper.**

The shipper-carrier exception to the workers' compensation statute is inapplicable in the present case because 84 Lumber is not in the shipping business and Vinal is not a "carrier" as those terms are defined by O.C.G.A. § 46-1-1(1).[2]   Illustrative of this point is Gunn v. Sims Crane Service, Inc., 182 Ga. App. 24 (1987), in which summary judgment was granted to a crane

---

[2] O.C.G.A. § 46-1-1(1) defines "carrier" as a person who undertakes the transporting of goods or passengers for compensation in the context of public utilities and public transportation.

company upon a finding that the crane company was a principal contractor and the statutory employer of the subcontractor trucking company's employee entitled to immunity protection pursuant to the Act rather than a mere shipper.   Columbia Nitrogen Corp. ("Columbia") contracted with Sims Crane Services, Inc. ("Sims") to relocate a propane tank from one part of Columbia's facility to another.  Id.  Sims in turn hired Gary Concrete Company ("Gary"), to supply the vehicle and driver to relocate the tank.  During the move on Columbia's premises, the tank rolled over the truck and the driver, Gunn, Gary's employee, and Gunn was killed.  Id. at 25.  Gunn's widow collected workers' compensation benefits and subsequently filed a wrongful death action against Sims alleging negligence and further claiming that the relationship between Sims and Gary was not that of principal contractor and subcontractor, but rather of that of shipper and carrier within the rule of Gramling v. Sunshine Biscuits, 162 Ga. App. 863 (1982).[3] Id.

However, the court found Gramling inapplicable because Gary was not in the carrier business and Sims was not in the shipping business and neither came within the definitions in O.C.G.A. § 46-1-1(1).  The court, in holding that the facts of the case brought it within the governance of Wright Assoc. v. Rieder, 247 Ga. 496 (1981) rather than Gramling, held that Sims was a statutory employer entitled to tort immunity.  "Just because the movement of goods was the ultimate purpose of the contract did not change the relationship from that of contractor/subcontractor and remove it from coverage of O.C.G.A. § 34-9-8."  Id. at 25.

---

[3] In Gramling, the court refused to view the relationship between shipper and carrier as one that affords the shipper the status of statutory employer for purposes of tort immunity where the contract between the injured employee's employer and Sunshine Biscuits required the carrier to safely transport the goods to Sunshine's customers, but specifically provided that the persons employed by the carrier remained employees of the carrier, and that the contract was not be construed to be inconsistent with the status of that relationship.  Gramling, 162 Ga. App. 863 (1987).  The court found this language to be indicative of the parties' relationship and interpreted it as a disclaimer on the part of the shipper of any responsibility for workers' compensation payments to the employees of the carrier. Id.  There is no such language contained in the Subcontract between 84 Lumber and Vinal.  See generally, Independent Contractor Hauler Agreement, supra, at Exhibit B.

The shipper-carrier exception to the workers' compensation tort immunity was also argued in Patterson v. Bristol Timer Co., 286 Ga. App. 423 (2007), and was summarily rejected on similar grounds.  Bristol, a logging and wood chipping company, contracted to supply wood chips to Inland Paperboard and Packaging, Inc. ("Inland").   Bristol then entered into a subcontract with Brownlow Trucking Company ("Brownlow") to load and transport the wood chips to Inland.  Id.  Bristol maintains a forklift at its wood chipping facility to assist in the loading of wood chips onto the trucks for delivery.  Patterson, a driver for Brownlow, was injured on Bristol's premises when he fell off a ladder while exiting the forklift.  Id.  Patterson brought a negligence claim against Bristol. In response, Bristol filed a motion for summary judgment claiming statutory immunity pursuant to O.C.G.A. § 34-9-8 and § 34-9-11.  Id. at 424.  The trial court granted Bristol's motion for summary judgment and Patterson appealed claiming that the trial court erred by considering the transport of finished goods a substantial service or essential part of Bristol's contract to supply wood chips to Inland instead of relying on the shipper-carrier exception to workers' compensation tort immunity.  Id. at 429.  Patterson, relying on Gramling v. Sunshine Biscuits, *supra*, also argued that Bristol was not a statutory employer because he was merely delivering Bristol's product.   However, the court held that the facts of this case fell "squarely within the language of O.C.G.A. § 34-9-8(a)," and held that under these circumstances Bristol was a principal contractor and Brownlow a subcontractor hired to assist Bristol in the completion of its contract with Inland.  Id. at 430.  The court found Gramling distinguishable because Brownlow was more than a mere carrier who delivered something for the shipper; it worked pursuant to a subcontract based on the prime contract between Bristol and Inland.[4]

---

[4] The court also found that the other cases relied on by Patterson were equally distinguishable.  See Gray Building Systems v. Trine, 260 Ga. 252, 391 S.E.2d 764 (1990) (holding O.C.G.A. § 34-9-8(a) does not apply  where injured employee worked for company who merely contracted to provide goods to the principal contractor); Western Elec.

Similar to the facts in <u>Patterson</u>, Vinal was more than a carrier who merely delivered materials for 84 Lumber. Vinal worked in tandem to the contracts that 84 Lumber had with its customers.  On the day of Plaintiff's injury, Vinal was scheduled and in fact did make seven deliveries to 84 Lumber's customers.  <u>See</u> Invoices and Hauler Logs at Exhibits G and H respectively.  The Plaintiff's injury occurred while  he was on the premises of 84 Lumber for the purpose of preparing to make deliveries to the customer's that 84 Lumber had contracted with for the supply and delivery of materials, and accordingly, his claims against 84 Lumber are barred pursuant to O.C.G.A. § 34-9-8 and § 34-9-11.

Like <u>International Leadburning</u>, <u>Gunn</u>, and <u>Patterson</u>, the Subcontract that 84 Lumber had with Vinal establishes a principal contractor-subcontractor relationship.  84 Lumber contracted with its customers for the supply of building materials and services.  Essential to 84 Lumber's core business is the transporting and delivering of those building materials to its customers.  To fulfill its obligations to its customers, 84 Lumber sublet its work to Vinal who provided transportation, delivery, and related services.  The Plaintiff was an employer of Vinal, who was injured while on the premises of 84 Lumber performing a substantial service in furtherance of 84 Lumber's contracts to transport and deliver building supplies to 84 Lumber's customers, and who collected workers' compensation benefits from Vinal.   Accordingly, 84 Lumber is entitled to tort immunity against the Plaintiff's claims because it was in a principal contractor-subcontractor relationship with Vinal as contemplated by O.C.G.A. § 34-9-8 and therefore immune from tort liability.

### E.  Plaintiff Was Performing A Substantial Service In Connection With The Goods Sold By 84 Lumber When He Was Injured.

---

Co. v. Capes, 164 Ga. App. 353, 296 S.E.2d 381 (1982) (contractor not statutory employer where injured employee worked for company who merely filled the vending machines at a plant engaged in the contractual work of manufacturing electric cables).

The Supreme Court of Georgia established that "[i]n order to make a party to the contract for the sale of goods such a 'contractor,' the contract to sell must be accompanied by an undertaking by either party to render substantial services in connection with the goods sold." Gray Building Systems v. Trine, 260 Ga. 252 (1990). In Gray, an injured worker ("Trine") was awarded workers' compensation benefits to be paid by Gray Building Systems ("GBS") after being injured on GBS' jobsite. After the court of appeals denied GBS' application for discretionary review, GBS appealed and was granted certiorari by the Supreme Court of Georgia. The issue for the court's determination was whether David's Welding Service, Trine's employer, was GBS' subcontractor engaged to provide substantial services in connection with the goods sold by GBS to third-parties in order to make GBS secondarily liable for the payment of Trine's workers' compensation benefits pursuant to O.C.G.A. § 34-9-8(a). Id.

In Gray, GBS called David's Welding Service ("DWS") to order door and window lintels that had to be fabricated by DWS on GBS' construction job. Id. Trine, an employee of DWS, was injured while unloading the steel beams from DWS' truck at GBS' jobsite. Id. Because Trine worked for DWS who had merely contracted to provide goods to GBS, the court held that O.C.G.A § 34-9-8(a) was inapplicable. The court explained that a "mere contract for the sale of goods does not make either the buyer or seller or both a 'contractor' as used in O.C.G.A. § 34-9-8." Id. Rather, to qualify as a "contractor" pursuant to the relevant statute, the contract to sell must be accompanied by the undertaking by either party to render substantial services in connection with the goods sold. Id. The court found that because DWS was only engaged to make the lintels for Gray, rather than to provide Gray with a product or service in connection with the goods sold by Gray to third-parties, DSW was not a "contractor" as contemplated by the statute. Id. The court further opined that the mere fact that Trine had "fabricated the lintels on [Gray's] construction site did not, in and of itself, make [Trine's] employer a subcontractor of

[Gray]." <u>Id.</u>   Accordingly, the court held that Gray was not Trine's statutory employer who would be secondarily liable for the payment of his workers' compensation benefits.  <u>Id.</u>

84 Lumber's situation differs from <u>Gray</u> in that the Plaintiff, through Vinal, contracted for and provided transportation and delivery services to the customers of 84 Lumber. Thus, the Subcontract was not a contract for the sale of goods from Vinal to 84 Lumber or vice versa, it was a contract for the transportation and delivering of materials to 84 Lumber's customers by Vinal.  The transportation and delivery of 84 Lumber's building services was a substantial service provided by Vinal to 84 Lumber in connection with goods sold by 84 Lumber. Accordingly, Vinal qualifies as a "contractor" pursuant to O.C.G.A. § 34-9-8 making 84 Lumber Plaintiff's statutory employer secondarily liable for the payment of Plaintiff's workers' compensation benefits and entitled to tort immunity.  The transportation and delivery of building materials is a substantial service and essential part of 84 Lumber's contracts to supply building materials to its customers.  [Affidavit of 84 Lumber at ¶ 4].  This service was so substantial to 84 Lumber that without Vinal's employees transporting, delivering, and servicing the customers' of 84 Lumber, 84 Lumber could lose its contracts with those customers.

   **F.   Defendants/Third-Party Plaintiffs Conner and Richardson Are Immune From Plaintiff's Claims Because As Supervisors/Managers Performing Within The Scope Of Their Employment They Share In The Immunity Afforded To Their Employer 84 Lumber.**

Plaintiff alleges in his Complaint that Richardson and Conner, as "employee-agents" of 84 Lumber should be held liable for the injuries he sustained.  <u>See</u> <u>generally</u> Complaint.  But because Richardson and Conner were in fact "employee-agents" of 84 Lumber and were performing non-delegable duties in their representative capacities for 84 Lumber when the Plaintiff's injury occurred, they share in the immunity afforded to 84 Lumber.   Tort immunity is extended to managers and/or supervisors of the statutory employer where as here, the alleged negligence is based on a general non-delegable duty of the statutory employer, and where the

manager and/or supervisor did not commit an "active, direct, individual action" directed towards the injured party, but were acting in their representative capacities as the alter ego of their employer. Pardue v. Ruiz, 263 Ga. 146 (1993); Padgett v. CH2M Hill Southeast, Inc., 866 F.Supp. 560 (M.D. Ga. 1994); Hay v. Britt Realty, Inc., 174 Ga. App. 214 (1985). Here, neither Conner nor Richardson committed any acts that were directed towards the Plaintiff such that personal liability would apply.

In Pardue v. Ruiz, *supra*, a subcontractor's employees were injured when the scaffolding they were working on collapsed. 263 Ga. 146 (1993). The injured employees received workers' compensation benefits from their employer and subsequently sued the principal contractor's safety officer claiming that he was negligent in failing to inspect the scaffolding. Id. The safety officer moved for summary judgment maintaining that an employee who acts as an alter ego of the principal contractor is entitled to the tort immunity enjoyed by the statutory employer where he was acting in his representative capacity alone. Id. at 147. In ruling that the safety director was in fact immune from the injured employees' suit, the Supreme Court of Georgia explained that there must be an active, direct, and individual action, beyond that of mere nonfeasance in the duty of general supervision, to impose a liability on an employee because that is a duty owed by the employer to its employees. Id. at 147-148. In so holding, the court opined that where "the duty breached by the supervisor is a non-delegable duty of general supervision or of providing a safe workplace, the employee shares in his employer's tort immunity." Id. at 147.

The District Court in Padgett v. CH2M Hill Southeast, Inc., 866 F.Supp. 560 (M.D. Ga. 1994), *supra*, also addressed the issue of whether the employees of a principal contractor would be afforded the immunity enjoyed by the principal contractor. In Padgett, a freelance welder sued the principal contractor and third-party defendant, EIC Elkins Constructors, Inc. ("Elkins") and its employees, a project engineer McMurray, and the job superintendent, Hansen, for injuries

he suffered in an explosion. Id. at 561.   McMurray had instructed Hansen to have a valve welded shut to repair a defect in a closed chamber of their water treatment plant.  Hansen hired the plaintiff Padgett to weld the valve shut.   Before Padgett entered the chamber, he asked Hansen if the chamber was safe and ready for welding and Hansen told Padgett that the chamber was ready.  The chamber was actually filled with oxygen-rich air and when Padgett began his welding job, the chamber exploded and Padgett was burned.  Id. Elkins, McMurray, and Hansen filed motions for summary judgment on the basis that Elkins was Padgett's statutory employer and had paid workers' compensation benefits to Padgett.  The court granted Elkins' motion and addressed the issue of whether McMurray and Hansen would also be immune from Padgett's suit as employees of Elkins as plaintiff's statutory employer.   The question for the court's consideration was whether McMurray and Hansen committed affirmative acts towards Padgett that caused or increased the risk of injury to him.  Id. at 561-562.   As to McMurray, the court found that there was no evidence of any affirmative action that caused or increased the risk to Padgett.  The court explained that because McMurray was responsible for general supervision of job-site safety, which the court opined, is a non-delegable duty, McMurray could not be held liable for Padgett's injury and summary motion in his favor was granted.  Id. at 562.  On the other hand, the court denied Hansen's motion for summary judgment because the record reflected that Hansen had made an affirmative statement directly to Padgett that the valve was ready for welding, thus increasing Padgett's risk of injury.  Id.

The record in the case at hand demonstrates that both Conner and Richardson were performing non-delegable duties within the scope of their employment at the time of Plaintiff's injury.  When the Plaintiff was injured, Richardson was preparing to build a load as his duties required of him as Warehouse Supervisor. [Affidavit of Keith Conner at ¶¶ 5-6].  See e.g. Hastings v. Mechalske, 336 Md. 663, 650 A.2d 274 (1994) (routine work assignments and

supervision are aspects of the non-delegable duty of providing employees a safe place to work).

And as Warehouse Supervisor, Richardson had the non-delegable duty of general supervision

and safety of the lumber yard where the Plaintiff's injury occurred.  Richardson testified:

> Q.      Would you agree that if the forklift had gone forward instead of sideways, you
>         would  not have run over Charlie Hall?
> A.      Yes.
> Q.      Okay.  Would you agree that as the mill warehouse supervisor --
> A.      Yes.
> Q.      -- that you are required to be an example of good safety procedures?
> A.      Yes.

Deposition of Richardson at 99:12-21, attached hereto as Exhibit J.  Richardson was required to

be more than just an example of good safety procedures; it was a part of his daily job

responsibilities as 84 Lumber's alter ego to ensure safety on the lumber yard.  [Affidavit of

Conner at ¶ 6].    Accordingly, the alleged breach of duty owed to the Plaintiff was not a duty

owed by Richardson personally, but was a duty delegated to him by 84 Lumber. Where a

supervisor allegedly fails to perform the employer's duty, the failure is that of the employer, not

the supervisor. Pardue v. Ruiz, 263 Ga. 146 (1993). And unlike the Hansen defendant in Padgett,

Richardson did not take any direct or intentional affirmative action geared towards the Plaintiff

that resulted in the Plaintiff's injury.  [Mitchell Deposition at 60:24-65:2]. Richardson did not

believe that there were any dangers present on the lumber yard when he began performing his

duties:

> Q.      Okay.  Earlier you said you didn't feel as if you were at fault in this accident; is
>         that right?
> A.      Yes.
> Q.      Why is that?
> A.      Because I went through all my procedures before I started that forklift and I
>         figured everything was clear enough for me to go about where I was going.

[Deposition of Richardson at 97:9-17].  Because a supervisor's negligence while acting in his

representative capacity alone is not enough to subject him to personal liability, Richardson is

entitled to the benefit of 84 Lumber's tort immunity.  The purpose of the Act is to shift the

burden of injuries from employers to the employer and the consuming public.  To deny immunity to Richardson would defeat this policy by practically mandating 84 Lumber to indemnify Richardson against the Plaintiff's claims.   See Pardue v. Ruiz, 263 Ga. 146, 148 (1993).

Moreover, like defendant McMurray in Padgett, there is nothing in the record to support a finding that Conner, as Store Manager, responsible for the non-delegable duties of general personnel supervision and job-site safety for 84 Lumber, was acting outside of his representative capacity or that he had committed any affirmative acts of negligence directed towards the Plaintiff.  Conner was not even present at the scene of the accident when the Plaintiff was injured.   [Deposition of Conner at 8:6-12].  Because there must be something beyond nonfeasance in the duty of general supervision to impose liability on Conner, he also shares in 84 Lumber's immunity.

## IV.   CONCLUSION

The facts viewed in the light most favorable to the Plaintiff show that summary judgment is proper because there is no genuine issue of material fact that would dispute a finding that 84Lumber as the Plaintiff's statutory employer and Keith Conner and Darren Richardson as employees of their statutory employer performing duties within the scope of their employment at the time of Plaintiff's injury, are entitled to tort immunity as a matter of law. Accordingly, Defendants/Third-Party Plaintiffs respectfully request that their Motion for Summary Judgment be Granted.

Respectfully submitted this 14th day of May, 2010.

**ADORNO & YOSS LLC**

*/s/ Vickie S. Carlton-Sadler*
Carl A. Gebo
Georgia State Bar No. 288711
Vickie S. Carlton-Sadler
Georgia State Bar No.  110410

Two Midtown Plaza, Suite 1500
1349 West Peachtree Street, N.E.
Atlanta, Georgia 30309

Attorneys for Defendants/Third-Party
Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2010, a copy of the foregoing DEFENDANTS'/THIRD-PARTY PLAINITFFS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF ON TORT IMMUNITY was served via the Courts ECF/CM electronic filing notification to the following attorneys of record:

G. Brinson Williams
Jones, Osteen and Jones
P.O. Box 800
Hinesville, GA 31310

David M. Wiesenfeld
Fred C. Abbott
Abbott & Wiesenfeld, PA
2929 Plummer Cove Road
Jacksonville, FL 32223

Craig R. White
Bryce W. Mowbray III
Skedsvold & White LLC
1050 Crown Pointe Parkway
Suite 710
Atlanta, GA 30338

G. Mason White
Brennan Harris & Rominger LLP
PO Box 2784
Savannah, GA 31402

*/s/ Vickie S. Carlton-Sadler*
Vickie S. Carlton-Sadler
Georgia Bar No.: 110410

295939